THE NEW ENGLAND TRUST COMPANY *vs.* CHARLES FOLSOM & another.

Suffolk.   May 23, 1929. — September 9, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Probate Court,* Jury issues.   *Will,* Validity.   *Unsound Mind.*

A motion, by next of kin contesting the allowance of an alleged will of a woman, for the framing of an issue for trial by jury as to the testamentary capacity of the alleged testatrix, was heard upon statements by counsel for the contestants and testimony of physicians, one of whom testified in substance that he had attended the testatrix professionally for the five years preceding her death and had had a number of conversations with her in which she had spoken of marriage as immoral and of her fondness for her cats and had said that she thought more of them "than she did of her relatives, because she could talk and commune with those cats, more so than she could with any of her relatives, because . . . the spirits of her departed sisters were resident in those cats."   The alleged will contained provisions for a trust for the life or until the marriage of the female beneficiaries, respectively, and for a trust, the income of which and the principal, if required, was to be paid "for the boarding during their respective lifetimes of such cats as may be owned by me at the time of my decease."   The physician also expressed the opinion that the alleged testatrix was "not of sound mind," but was "suffering from delusions due to the condition of her mind."   A judge of probate denied the motion.   Upon appeal, it was *held,* that

(1) Although neither type of gift in the will was in itself evidence of lack of testamentary capacity, all the evidence offered presented a genuine and doubtful question of fact as to the testamentary capacity of the alleged testatrix supported by evidence of a substantial nature;
(2) The motion should have been allowed.

PETITION, filed in the Probate Court for the county of Suffolk on September 5, 1928, for the proof of the will of Charlotte Sutton, late of Boston.

Nephews of the alleged testatrix filed a motion for the framing of an issue to be tried by a jury, as stated in the opinion. The motion was heard by *Prest*, J. Material facts offered to be proved by the contestants are stated in the opinion. The motion was denied. The contestants appealed.

*F. X. Daly*, for the respondents.

*A. R. Stokes*, (*R. G. Wellings* with him,) for the petitioner.

FIELD, J. Upon a petition for the allowance of an alleged will and a codicil thereto, both dated January 26, 1928, of Charlotte Sutton, late of Boston, who died August 29, 1928, a motion was made in the Probate Court by the contestants — nephews, next of kin and heirs at law of the deceased — to frame a jury issue as to her testamentary capacity. The motion was denied and the contestants appealed. The decision of the judge of probate was made upon statements of counsel as to the evidence which they expected to be able to offer, and upon the testimony of several physicians.

Many of the legacies given by the will were upon trust for the life or until the marriage of the female beneficiaries, respectively. There also was a gift in trust to pay the income thereof and the principal if required "for the boarding during their respective lifetimes of such cats as may be owned by me at the time of my decease." Gifts of income terminable upon marriage are familiar. Ordinarily the main purpose is to provide for the beneficiary while single and not to promote celibacy. See *Ruggles* v. *Jewett*, 213 Mass. 167, 171. See also *Harlow* v. *Bailey*, 189 Mass. 208. Gifts for the benefit of animals are not uncommon, and if sufficiently general in character may be charitable. See *Johnson* v. *Talbot*, 255 Mass. 155; *In re Dean*, 41 Ch. D. 552. Neither type of gift is of itself evidence of lack of testamentary capacity.

In this case, however, the testatrix's physician testified that he had attended her professionally from 1923 until her death, and that he had had a number of conversations with her in which she had spoken of marriage as immoral, and of her fondness for her cats and had said that she thought more of them "than she did of her relatives, because she could talk and commune with those cats, more so than she could with any of her relatives, because . . . the spirits of her departed sisters were resident in those cats." He expressed the opinion that she was "not of sound mind," but was "suffering from delusions due to the condition of her mind." In view of this testimony taken in connection with other testimony and statements, which need not be recited, and with the provisions of the will, we think that there was a "genuine and doubtful question of fact" as to her testamentary capacity "supported by evidence of a substantial nature," (*Gifford* v. *Patten*, 265 Mass. 362, and cases cited), and that the issue should have been framed.

The testimony of the testatrix's physician is not "deficient in particularity" as were the statements of expected evidence in *Swift* v. *Charest*, 268 Mass. 47, 50. The delusions testified to might be found to have affected the disposition by the testatrix of her property. See *Taylor* v. *Creeley*, 257 Mass. 21, 29. They are not necessarily to be explained away as merely unusual religious views. See *Dunham* v. *Holmes*, 225 Mass. 68, 72, 73. The expected evidence in this case seems to us to go somewhat farther than that in *Union Trust Co. of Springfield* v. *Magenis*, 259 Mass. 409, or that in *Taylor* v. *Callahan*, 265 Mass. 582, which cases we have said mark "the extreme limit beyond which the court is not inclined to go in upholding the probate judges in denying jury issues," (*Swift* v. *Charest, supra*), and much farther than that in the case of *Johnson* v. *Talbot, supra*, relied on by the petitioner, in which an order directing that the issue of testamentary capacity be submitted to the jury was reversed.

The order of the Probate Court denying the issue of testamentary capacity is

*Reversed.*