CATHERINE DUNCAN & another *vs.* EDWIN R. HUFFAM & others.

Suffolk.     March 10, 1938: — May 25, 1938.

Present: RUGG, C.J., FIELD, LUMMUS, DOLAN, & COX, JJ.

*Probate Court,* Jury issues, Rehearing, Examination as to will. *Unsound Mind.     Undue Influence.*

On statements by counsel of expected evidence, there was no error in the denial of a motion for jury issues, whether a testator, a man eighty-two years of age when his will was made, was then of sound mind and whether the will was procured by undue influence of a relative of his deceased wife, who had devoted herself to his business interests and his personal care and who was named as a residuary legatee.

Appeals from the denial of petitions in a probate court, filed after jury issues had been refused, seeking a rehearing for the purpose of examining further evidence, presented no question of law for consideration by this court where it appeared that, at a hearing of the petitions, the judge considered all such further evidence.

PETITION, filed on May 28, 1937, in the Probate Court for the county of Suffolk for probate of the alleged will of Archibald M. Robertson, late of Boston.

The motions were heard by *Dillon, J.*

*D. J. Triggs,* (*M. L. Fahey* with him,) for Edwin R. Huffam & others.

*W. P. Murray,* (*S. C. Brackett* with him,) for Catherine Duncan and another.

COX, J.   Three appeals are before the court.   The first is from an order of a judge of probate, denying a motion for the framing of issues for a trial by jury concerning an instrument dated March 16, 1933, offered for probate as the last will and testament of Archibald M. Robertson, late of Boston.   The proposed issues which are argued relate to the soundness of mind of the decedent and to undue influence.   The case was heard on statements made by counsel

of the respective parties as to the evidence that they expected to offer if there should be a jury trial. The second appeal is from an order of the same judge denying and dismissing a petition of the contestants of the instrument offered for probate, that the order denying their motion for jury issues be vacated; that the motion for jury issues be reheard; and that at such rehearing, the contestants be permitted to introduce in evidence all former wills of the decedent or copies thereof. The third appeal is from an order of the same judge denying and dismissing a petition of the contestants, that certain persons, therein named, be examined on oath as to the existence of other wills believed to have been made by the decedent, prior to the instrument offered for probate, and that they be ordered to deliver any such wills into the Probate Court.

The principles of law which govern in cases where it is sought to have jury issues framed need not be restated. See *Fuller* v. *Sylvia*, 240 Mass. 49, 53; *Cranston* v. *Hallock*, 281 Mass. 182, 183, 184, and cases cited; *Smith* v. *Patterson*, 286 Mass. 356; *Terry* v. *King*, 286 Mass. 598.

The instrument which was offered for probate was executed on March 16, 1933. The decedent died on May 25, 1937, at the age of eighty-six. His wife died in April, 1932, and their only child died in his early childhood. The decedent came to this country when a young man and opened a small dry goods store in Roxbury, with capital derived from his savings. For a time he was not only proprietor but also the only clerk. Later on he opened another store in South Boston. In the early 1880's he brought here from Scotland his wife's niece, Catherine Duncan, one of the principal beneficiaries under the instrument offered for probate. She never married and worked for years in the decedent's stores. From statements of counsel it could be found that her work was arduous and that her hours of labor were long; and that the decedent had repeatedly said that he owed a large part of his fortune to her. The store in Roxbury was sold in 1909 or 1910, and Catherine Duncan seems to have returned to Scotland in about 1915 when her sister Margaret, who had

come here, returned to be married; but when the decedent's wife became ill in 1930, the illness lasting until her death in April, 1932, Catherine Duncan returned to this country and cared for the decedent's wife until she could do the work no longer. Thereafter the decedent's wife was cared for by a niece of the decedent. Daniel Duncan, a brother of Catherine Duncan, had a power of attorney from the decedent which was dated in 1910. In 1908 the decedent brought to this country his sister, Christina Huffam, and her nine children; he rented an apartment for them, provided it with furniture and supported them until the children could obtain work. The surviving Huffam children and an unmarried brother of the decedent are the contestants. The residue of the decedent's estate is left to Catherine Duncan, her brother, Daniel Duncan, and her sister Margaret R. Thomson.

The decedent was survived by the unmarried brother, who was given $10,000 by the instrument; seven children of the deceased sister, Christina Huffam, to five of whom legacies of $5,000 each were given and to the remaining two, legacies of $1,000; and three children of a deceased brother, to each of whom a legacy of $2,000 was given. These last three children are not contestants. The instrument contains legacies for all the heirs at law with the exception of a grandniece who lives in London. In addition, legacies of $1,000 each were given to a cousin, niece and two nephews of his deceased wife, and one of $2,000 to a former employee. The estate is inventoried at about $330,000.

The contestants assert that the decedent was of unsound mind. The statements of counsel for the contestants contain many references to the physical and mental condition of the decedent from 1930 to the time of his death. The causes of his death were those that are not unusual in persons of advanced age and all of them are related to the wearing out of his heart. Although it is asserted that he began to be troubled in 1930 and that his heart condition developed progressively until his death in 1937, yet it also appears from statements in behalf of the contestants themselves that the decedent went about, was interested in the

quotations of the stock market as late as 1934, went to
Scotland alone in 1932, after the death of his wife, to visit
Catherine Duncan and upon her invitation, and again in
July, 1933, when he was accompanied by Catherine Duncan.
A recital of all the expected testimony would serve no use-
ful purpose, but from a careful examination of it we are of
the opinion that it cannot be said that the judge was wrong
in refusing to frame the issue.

Upon the question of undue influence, alleged to have
been exercised by Catherine and Daniel Duncan, we are
of the opinion that the judge was not required to frame an
issue.    Statements are attributed to the decedent which
tend to indicate his fondness for the Huffam family and a
lack of intention to remember the Duncans in his will.
Catherine Duncan lived with the decedent from the time
of their return from Scotland in October, 1932, until his
death, and some of the statements of counsel indicate that
she rarely left him alone when any of his relatives came to
see him and that at times he appeared to follow, if not obey,
directions that she gave.    On the other hand, there were
statements that in previous wills some of the Huffam chil-
dren and the surviving brother had been provided for in
much the same manner as in the contested instrument; that
on the day the instrument was executed, the decedent went
alone from his home to the attorney's office and that the
decedent was a "shrewd, sound, sober, stubborn, hard-
headed, honest Scotchman" over whom there was "no do-
minion of either a mental or physical nature."    In this
instance it is not necessary to recite in detail all of the
expected testimony.    It is doubtful if it goes beyond the
point of mere opportunity to exercise undue influence,
which is not enough.    See *Johnson* v. *Loring,* 267 Mass.
310.    The decision of the probate judge, in whom there is
vested an element of discretion, is entitled to some weight.
*Bemis* v. *Andrews,* 280 Mass. 409.    See *Clark* v. *McNeil,* 246
Mass. 250, 255.    It cannot be said that the denial of the mo-
tion for jury issue on the ground of undue influence was error.

The appeal from the order of the judge denying and dis-
missing the petition of the contestants that certain persons

named therein be examined on oath as to the existence of other wills believed to have been made by the decedent and that they be ordered to deliver any such wills into the Probate Court has no merit.  At the hearing on this petition the judge permitted counsel for the contestants to examine the persons named.  See G. L. (Ter. Ed.) c. 191, §§ 13, 14.  No evidence was adduced beyond the fact that an attorney had made four prior wills for the decedent, in 1919, 1924, 1929 and 1932, all of which he gave to the decedent.  No other testamentary instrument except the one here in question was found in his safe deposit box after his death.  Copies of the four prior wills, which had been kept by the attorney, were produced and delivered to the judge. There was no error in denying and dismissing this petition.

There remains for consideration the appeal from the order of the judge denying and dismissing the contestants' petition that the order denying the motion for jury issues be vacated; that the motion for jury issues be reheard; and that, at such rehearing, the contestants be permitted to introduce in evidence all former wills or copies thereof. From the record it appears that at the hearing on this petition, which was held with the hearing on the petition just referred to, the judge not only heard the parties and witnesses but also took the transcript of testimony of the hearing on the motion for jury issues and the copies of the four wills, with the statement, "I will read the testimony over again and look at these other wills and see what I can do."  A week later his order denying and dismissing the petition was entered.  The petition was addressed to the discretion of the judge and, in the circumstances disclosed, his disposition of it cannot be said to have been erroneous.  *Macomber* v. *King*, 288 Mass. 381, 383, and cases cited.  *O'Reilly* v. *O'Reilly*, 293 Mass. 332.

> *Order denying motion for jury issues affirmed.*
> *Order denying and dismissing petition to vacate order and for rehearing affirmed.*
> *Order denying and dismissing petition to examine certain persons and for delivery of wills into court affirmed.*